IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MEYER-CHATFIELD, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | No. 05-3673 |
| v. | : | |
| | : | |
| CENTURY BUSINESS SERVICING, INC.,: | | |
| et al., | : | |
| | : | |
| Defendants. | : | |

## OPINION AND ORDER

**Slomsky, J.**                                                                                            **August 12, 2010**

## I.    INTRODUCTION

Before the Court is the Motion for Partial Summary Judgment Pursuant to Fed. Rule Civ. P. 56 filed by Defendants Century Business Services, Inc. ("CBIZ"), Benmark, Inc. ("Benmark"), and Lon C. Haines ("Haines"). Plaintiff Meyer-Chatfield Corporation commenced this action on July 14, 2005 against CBIZ, Benmark, Haines, Thomas Kosanda ("Kosanda"), Larry L. Linenschmidt ("Linenschmidt"), and Dana C. Hayes ("Hayes"). (Doc. No. 1, Pl. Compl. (hereinafter "Pl. Compl.")) Plaintiff has settled with Kosanda, Linenschmidt and Hayes, and CBIZ, Benmark, and Haines remain as Defendants. In the remaining claims set forth in the Complaint, Plaintiff alleges Breach of Contract, Interference with Contracts, and Civil Conspiracy. (Id.) Plaintiff also requests an Injunction. (Id.) These claims arise from allegations that CBIZ, Benmark, and Haines solicited Agents and Strategic Partners from Plaintiff in breach of various contracts with Plaintiff. (Id.) The case is before this Court based on diversity of citizenship jurisdiction. Therefore, Pennsylvania state law applies as specified in the contracts of the parties.

## II. PROCEDURAL HISTORY

On May 20, 2010, Defendants filed the instant Motion for Partial Summary Judgment (Doc. No. 181), seeking a determination from the Court on the meaning of solicitation, the validity of a liquidated damages clause, and the admissibility of the damages calculation of Plaintiff's expert. On May 27, 2010, Plaintiff filed a Memorandum in Opposition to Defendants' Motion for Partial Summary Judgment (Doc. No. 183), and a Response to Defendants' Statement of Purportedly Undisputed Facts (Doc. No. 184). On June 3, 2010, Defendants filed a Reply to Plaintiff's Response (Doc. No. 186). On June 24, 2010, Plaintiff filed a Sur-Reply Memorandum in Opposition to Defendants' Motion for Partial Summary Judgment (Doc. No. 205). A hearing was held on the Motion on July 2, 2010. At the hearing the parties were given leave to file additional briefs. On July 23, 2010, Defendants filed a Memorandum in Support of their Motion (Doc. No. 223), and Plaintiff filed a Supplemental Memorandum in Opposition to the Motion (Doc. No. 224). Now that briefing on all issues is concluded,[1] the Court will proceed with its disposition of the pending motions.

## III. STATEMENT OF FACTS

Plaintiff provides various business services to its clients, including the sale of Bank Owned Life Insurance ("BOLI"), through its agents and strategic partners. (Pl. Compl., at ¶¶ 3, 11). Benmark is engaged in the same business as Plaintiff, competes directly against Plaintiff, and also sells BOLI. (Id. at ¶¶ 5, 21). Benmark is a wholly owned subsidiary of CBIZ. (Id. at ¶ 5).

---

[1] On August 2, 2010, Plaintiff filed a Brief Responding to Allegation of "Manufacturing Evidence" Made in Defendants' Supplemental Memorandum on Motion for Summary Judgment (Doc. No. 230). On August 6, 2010, Defendants filed a Response to Plaintiff's Supplemental Filing and Allegation of Forgery of Records (Doc. No. 241). These briefings raise issues ancillary to the Motion for Partial Summary Judgment. Accordingly, any ruling by the Court on these issues will be rendered separately.

Defendant Haines worked for Plaintiff as its Vice-President of Sales and Marketing, but left Plaintiff in March 29, 2004 to work for CBIZ. (Doc. No. 181, Ex. A, Att. #1 at 1 (hereinafter "Haines Empl. Agree.")); (Doc. No. 181, Ex. A, Att. #2 at 1 (hereinafter "Haines Sep. Agree.")).

As a condition of Haines' employment agreement with Plaintiff, Haines agreed not to compete with Plaintiff for a period of four years after leaving the company. (Haines Empl. Agree. at 9-10). When Haines left Plaintiff for CBIZ, Plaintiff and Haines agreed to replace Haines' non-compete clause with a nonsolicitation agreement that would allow Haines to work for CBIZ, but would restrict Haines from soliciting any employees or customers of Plaintiff. (Haines Sep. Agree.). The nonsolicitation clause required Haines to "not directly or indirectly (i) solicit any of Plaintiff's employees, agents, representatives, strategic partnerships, [or] affiliations." (Id. at 1). The agreement further provided for liquidated damages of "(ii) a fee of $50,000 for each employee, agent, or representative recruited away from Plaintiff; (iii) $250,000 for each strategic partner solicited." (Id. at 2). As defined by the parties, an "Agent" is "a person who is licensed to sell insurance in the state of sale and is appointed by the insurance carrier to sell the insurance contract" and a "Strategic Partner" is "an organization that typically works with the banking community and has demonstrated an interest in working with Plaintiff or vice versa." (Doc. No. 181, Ex. A, Att. #3 at 2).

In Spring 2004, Benmark approached Plaintiff and expressed an interest in acquiring Plaintiff. (Pl. Compl. at ¶ 38). On June 4, 2004, prior to Benmark performing its due diligence for the potential acquisition, the two parties agreed to multiple Confidentiality Agreements. (Id. at ¶ 39). On September 29, 2004, the two parties agreed to an additional Nonsolicitation Agreement. (Id.) The Nonsolicitation Agreement required Benmark to "not solicit any personnel of [Plaintiff] to become personnel of [Benmark] or any affiliate of [Benmark]." (Doc. No. 181, Ex. A, Att. #8 at 3

(hereinafter "Benmark Nonsolicitation")). The agreement with Benmark did not include a liquidated damages clause. (Id.)

Acquisition discussions between Benmark and Plaintiff broke down and Benmark never acquired Plaintiff. (Doc. No. 181, Def. Mem. Supp. Mot. Sum. J., at 4 (hereinafter "Def. Mem.")). On February 9, 2005, Agent Thomas Kosanda was fired for cause from Plaintiff. (Doc. No. 183, Pl. Mem. Opp. Def. Mot., at 4 (hereinafter "Pl. Mem.")). In March 2005, Kosanda and his sales team, which consisted of Larry Linenschmidt and Dana Hayes (collectively "Kosanda Team"), were hired by Benmark. (Pl. Compl. at ¶¶ 26, 30, 35). Strategic Partners Thomas Brothers ("Thomas Brothers"), Ben Shapiro ("Shapiro"), William Lynch ("Lynch"), and America's Community Bankers ("ACB") terminated their business relationship with Plaintiff as well. (Pl. Mem., at 14).

In their Complaint, Plaintiff alleges Benmark, CBIZ, and Haines breached their respective Nonsolicitation Agreements by soliciting the Agents and Strategic Partners. (Pl. Compl. at ¶¶ 54, 58, 62, 66, 70). The Thomas Brothers and Lynch were working with Plaintiff as strategic partners on an important sale – the Mercantile BOLI Transaction ("BOLI Transaction") – when they terminated their relationship. (Doc. No. 181, Att. #2, State. Undisp. Facts, at ¶ 22 (hereinafter "Def. State.")). Plaintiff's expert estimates the damages to Plaintiff from the loss of this BOLI Transaction was $441,925. (Doc. No. 181, Ex. G at 6-8 (hereinafter "Expert Report")). Plaintiff's expert estimates damages to Plaintiff caused by the solicitation of the Kosanda Team at either $4,035,380, based on the assumption the Kosanda Team would have stayed with Plaintiff for three additional years, or $5,837,197, based on the assumption the Kosanda Team would have stayed with Plaintiff for five additional years. (Id. at 3). Plaintiff claims only liquidated damages for the alleged solicitation of Shapiro and ACB. (Id.)

## IV. SUMMARY JUDGMENT STANDARD

Granting summary judgment is an extraordinary remedy. Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Bouriez v. Carnegie Mellon Univ., 585 F.3d 765, 770 (3d Cir. 2009). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law. Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. Liberty Lobby, 477 U.S. at 247-49.

In ruling on a motion for summary judgment, the Court must view the evidence, and make all reasonable inferences from the evidence, in the light most favorable to the nonmoving party. Chambers v. School Dist. of Philadelphia Bd. of Educ., 587 F.3d 176, 181 (3d Cir. 2009); Bouriez, 585 F.3d at 770. Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the Court must credit the nonmoving party's evidence over that presented by the moving party. Liberty Lobby, 477 U.S. at 255.

## V. DISCUSSION

Defendants request partial summary judgment on three issues. First, they wish to exclude certain definitions of "solicitation" because they contend its ordinary meaning is clear and unambiguous. Second, Defendants ask the Court to hold that Plaintiff cannot collect liquidated damages because actual damages are calculable and allowing liquidated damages will amount to a

double recovery. Lastly, Defendants contend that the expert's damages calculation in regard to Kosanda is not admissible because the length of time Kosanda would have stayed with Plaintiff had he not been fired is highly speculative. For the reasons discussed below, the Court will grant summary judgment on the issue of solicitation, and deny summary judgment on the matters of liquidated damages and the expert's damage calculation.

**A. Meaning of Solicitation**

Defendants ask this Court to hold as a matter of law that "solicitation" is not ambiguous, that a "solicitation" requires the employer to first approach a potential employee, and that the mere act of hiring an employee is not considered solicitation. Defendants also request that the court prohibit Plaintiff from introducing at trial parol evidence that is contrary to this definition of solicitation.

Under the parol evidence rule, "[w]here the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement . . . and its terms and agreements cannot be added to nor subtracted from by parol evidence." Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 436 (Pa. 2004) (quoting Gianni v. Russell & Co., 126 A. 791, 792 (Pa. 1924)). Parol evidence is any oral testimony, written agreements, or other writings created prior to the contract that would serve to explain or vary the terms of a contract. Lenzi v. Hahnemann University, 664 A.2d 1375, 1379 (Pa. Super. 1995).

The rule, however, does allow the admission of evidence to explain an ambiguity in a contract "irrespective of whether the ambiguity is created by the language of the instrument or by extrinsic or collateral circumstances." Id. at 437 (quoting Estate of Herr, 161 A.2d 32, 34 (Pa. 1960)). "Under Pennsylvania law, ambiguous writings are interpreted by the fact finder and

unambiguous writings are interpreted by the court as a question of law." Mellon Bank, N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001, 1010, n. 10 (3d Cir. 1980). "Determining whether the terms of a contract are ambiguous is a question of law" for the court to decide. Ankerstjerne v. Schlumberger, Ltd., 155 Fed. Appx. 48, 49 (3d Cir. 2005).

"In determining whether a contract term is ambiguous, [a court] must consider the actual words of the agreement themselves, as well as any alternative meanings offered by counsel, and extrinsic evidence offered in support of those alternative meanings." St. Paul Fire and Marine Ins. Co. v. Lewis, 935 F.2d 1428, 1431 (3d Cir. 1991). A contract will be found ambiguous:

> if, and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning. A contract is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends; and a contract is not rendered ambiguous by the mere fact that the parties do not agree on the proper construction.

Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 614 (3d Cir. 1995) (internal quotations and citations omitted).

When considering whether a contract is ambiguous, a court's review of extrinsic evidence is confined to determining "the parties' linguistic reference." Id. Extrinsic evidence to show ambiguity in a contract can only be evidence that addresses the meaning of a specific term in the contract, and not the subjective intent of the parties. Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc., 247 F.3d 79, 93-94 (3d Cir. 2001); Prudential Ins. Co. of America v. Prusky, 2008 WL 859217 at *19 (E.D.Pa. March 31, 2008). For example,

> if the evidence showed that the parties normally meant to refer to Canadian dollars when they used the term 'dollars,' this would be

> evidence of the right type. Evidence regarding a party's beliefs about
> the general ramifications of the contract would not be the right type
> to establish latent ambiguity.

Id. at 94 (internal citations omitted). "[A] party offers the right type of extrinsic evidence for establishing latent ambiguity if the evidence can be used to support 'a reasonable alternative semantic reference' for specific terms contained in the contract." Id. at 94 n. 3 (citing Mellon Bank, 619 F.2d at 1012 n. 13 (3d Cir 1980)).

Haines' nonsolicitation agreement requires he "not directly or indirectly (i) solicit any of Plaintiff's employees, agents, representatives, strategic partnerships, [or] affiliations." (Haines Separation at 1). Benmark's nonsolicitation agreement requires it "not solicit any personnel of [Plaintiff] to become personnel of [Benmark] or any affiliate of [Benmark]." (Benmark Nonsolicitation at 3). Neither contract defines "solicit." Black's Law Dictionary defines "solicit" as:

> To appeal for something; to apply to for obtaining something; to ask earnestly; to ask for the purpose of receiving; to endeavor to obtain by asking or pleading; to entreat, implore, or importune; to make petition to; to plead for; to try to obtain; and though the word implies a serious request, it requires no particular degree of importunity, entreaty, imploration, or supplication. To awake or incite to action by acts or conduct intended to and calculated to incite the act of giving. The term implies personal petition and importunity addressed to a particular individual to do some particular thing.

Black's Law Dictionary, p. 1392 (6th ed. 1990). Webster defines solicit as "to entreat, importune . . . to endeavor to obtain by asking or pleading . . . to urge." Webster's New Intl. Dictionary, 2d ed.

Defendants assert "solicit" is not ambiguous as used in the contracts and urge the court to adopt the dictionary definition of "solicit." Defendants point to Akron Pest Control v. Radar Exterminating Co., Inc. 455 S.E.2d 601 (Ga. App. 1995), where a Georgia state court considered

whether the term "solicit" was ambiguous. The Akron court considered whether a party bound by a nonsolicitation agreement should "*refuse and, in fact, turn away* pest control business if contacted by any customers." Id. at 602. The court held that an agreement "not to solicit, either directly or indirectly, any current or past customers" requires more than "[m]erely *accepting* business [to] constitute a solicitation of that business." Id. at 601, 603. The court noted that solicitation requires "some affirmative action" on the part of the solicitor. Id. at 603.

Also relevant here is Aetna Bldg. Maintenance Co. v. West, 246 P.2d 11 (Cal. 1952). Aetna concerned an agreement where the defendant may not "solicit, serve and/or cater to any of the customers of the [plaintiff] Company served by him." Id. at 13. Despite the additional language of "serve and/or cater" modifying solicit, the court still held that "[m]erely informing customers of one's former employer of a change of employment, without more, is not solicitation. Neither does the willingness to discuss business upon invitation of another party constitute solicitation on the part of the invitee." Id. at 15; see also, Hair Club for Men, LLC v. Elite Solutions Hair Alternatives, Inc., 2007 WL 1080588 at *2 (E.D.Cal. April 05, 2007) (using identical language in its holding).

Plaintiff contends that "[i]n construing a contract, a court's paramount consideration is the intent of the parties." Mellon Bank, 619 F.2d at 1009 (3d Cir. 1980) (quoting O'Farrell v. Steel City Piping Co., 403 A.2d 1319, 1324 (Pa. Super. 1979)). Generally, a court looks to the contract language to determine the intent of the parties. Id. Plaintiff proposes here, however, that a March 2005 email, in which Roger Hauge, the President of Defendant Benmark, refers to the June 2004 Nonsolicitation Agreement as "a restriction on us hiring," is evidence of the intent of the parties when they wrote the agreement, despite the fact that it was sent almost ten months after the parties entered into the agreement. Plaintiff also points to the deposition of Hauge by Defendants' counsel

on September 12, 2007, where Hauge answered "yes" to the question "would it [solicitation] include making an offer of employment?" (Doc. No. 183, Ex. C, Hauge Dep., at 162). However, this deposition testimony occurred even later than the email and, accordingly, even further from the date of the agreement.[2] The statements are not proper extrinsic evidence of the meaning of "solicit," as the statements occurred well after the agreement was signed and appear to evince a party's "beliefs about the general ramifications of the contract" rather than the "meaning of a specific term."

Further, "the proffered interpretation cannot contradict the common understanding of the disputed term or phrase when there is another term that the parties could easily have used to convey this contradictory meaning." Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc., 247 F.3d 79, 94-95 (3d Cir. 2001) (describing in detail four cases where the Third Circuit or the Pennsylvania Supreme Court denied an alternative interpretation for this reason). The existence of another term that could have been used is especially significant when the parties are sophisticated. Mellon Bank, 619 F.2d at 1009. In the present case, the parties could have easily stipulated that Defendants could not "solicit or hire" Plaintiff employees, but instead used only the word "solicit."

Finally, a "trial court need not define specific statutory terms unless they are outside the common understanding of a juror or are so technical or specific as to require a definition." United States v. Chenault, 844 F.2d 1124, 1131 (5th Cir. 1988); see United States v. Brito, 136 F.3d 397,

---

[2] Furthermore, the question as excerpted by Plaintiff in its Memorandum of Law does not represent the entire exchange. During Hauge's deposition, he was asked, "What's your concept of soliciting independent contractors of Meyer-Chatfield? What would that mean, what would that include?" (Doc. 183, Ex. C, Hauge Dep., at 162). Hauge responded: "In its strictest sense, it would mean going after them. It would mean contacting them and basically doing whatever it is you do to try and hire them." (Id.) Hauge was then asked, "Would it include making an offer of employment?," and he responded, "Yes." (Id.) When viewed in context, it is not clear from Hauge's response, "Yes," that he agreed solicitation could consist of mere hiring.

407 (5th Cir. 1998); United States v. Sanchez-Sotelo, 8 F.3d 202, 212 (5th Cir. 1993); United States v. Morris, 928 F.2d 504, 511 (2d Cir. 1991). Plaintiff asserts this Court should not define "solicit" for the jury because the term is not "outside the common understanding of a juror" and is not "so technical or specific as to require a definition." United States v. Jackson, 2000 U.S. Dist. LEXIS 1297, *24-25 (E.D. Pa. Feb. 14, 2000) (refusing to define the statutory language "in concert" for the jury); Diana v. Oliphant, 2009 U.S. Dist. LEXIS 11250, *32-34 (M.D. Pa. Feb. 13, 2009) (holding a trial court had no obligation to define the statutory term "administrative purposes"); United States v. Olofson, 563 F.3d 652, 659 (7th Cir. 2009) (holding the trial court properly refused to define the statutory term "automatic"). However, there are nuances to the word "solicit" which appear in its definition set forth in Black's Law Dictionary, supra. This may require further clarification for the jury.

Accordingly, the Court concludes the term "solicit" as such is not ambiguous, and cannot be defined to include mere hiring. It includes actions of Defendants that fall within the definition of "solicit" as defined in Black's Law Dictionary, supra. Because "solicit" is unambiguous, Plaintiff will be precluded from offering parol evidence of a contrary meaning. However, the Court will reserve ruling on whether it is necessary to define the term "solicit" for the jury in accordance with the definition in Black's Law Dictionary.

Despite the Court granting the Motion for Partial Summary Judgment on the meaning of the word "solicit," Plaintiff will be permitted to introduce evidence relevant to the issue of solicitation. Under the definition in Black's Law Dictionary, solicitation is not confined only to the verbal act of asking or requesting something, or to the act of formally first approaching a potential employee. Actions to "awake or incite to action," or "conduct intended to and calculated to incite" the desired

act are also acts of solicitation. See definition in Black's Law Dictionary, supra. Plaintiff will be permitted to offer evidence which falls under this rubric, but is not permitted to argue that mere "hiring" of former employees, agents or strategic partners is the equivalent of solicitation.

**B. Liquidated Damages**

Defendants argue that the liquidated damage clause in Haines' Nonsolicitation Agreement is not enforceable because actual damages are calculable. "[C]ontracting parties may provide for pre-determined liquidated damages in the event one party fails to perform, particularly in circumstances where actual damages would be difficult to estimate in advance or to prove after a breach occurs." Pantuso Motors, Inc. v. Corestates Bank, N.A., 798 A.2d 1277, 1282 (Pa. 2002) (quoting Restatement (Second) of Contracts § 356 (1979)). However, "[a] term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty." Id. Liquidated damages "clauses are enforceable provided, *at the time the parties enter into the contract*, the sum agreed to is a reasonable approximation of the expected loss rather than an unlawful penalty." A.G. Cullen Const., Inc. v. State System of Higher Educ., 898 A.2d 1145 (Pa. Cmwlth., 2006) (emphasis added). For liquidated damages,

> the question . . . is to be determined by the intention of the parties, drawn from the words of the whole contract, examined in the light of its subject matter and its surroundings; and that in this examination we must consider the relation which the sum stipulated bears to the extent of the injury which may be caused by the several breaches provided against, the case or difficulty of measuring a breach of damages, and such other matters as are legally or necessarily inherent in the transaction.

Com. v. Musser Forests, Inc., 146 A.2d 714, 717 (Pa. 1959) (quoting March v. Allabough, 103 Pa. 335, 341 (Pa. 1883)). "[T]he question whether a sum stipulated for in a written contract is a penalty

or liquidated damages is a question for the court, to be determined by the intention of the parties, examined in the light of its subject-matter and its surroundings." Laughlin v. Baltalden, Inc., 159 A.2d 26, 29 (Pa. Super. 1960).

Defendants argue that because Plaintiff's expert was able to calculate damages attributable to one group of employees, the Kosanda Team, he should be able to calculate damages for all the employees. Defendants assert, based on the expert's report, that the calculations are not "difficult . . . to prove after a breach occurs." However, the expert's calculation estimates the damage from Kosanda's solicitation by using actual commissions earned by Plaintiff during the years after Kosanda was fired. The actual commissions were certainly not available at the time Haines and Plaintiff entered the nonsolicitation agreement or when Plaintiff fired Kosanda. Furthermore, the expert calculated damages for two different periods of time Kosanda might have remained with Plaintiff but for Defendants' solicitation. As will be noted later in this Opinion, the applicable length of time is a disputed question of fact and would not have been known at the time the parties entered into the contract. Thus, there was uncertainty involved in the damages calculation at the time the parties entered the contracts.

Plaintiff also provides estimates of actual damages to show that the liquidated damages amounts were a "reasonable approximation of the expected loss." Plaintiff's expert estimates that the BOLI Transaction, which was worked on by two strategic partners, caused actual damages of $441,925. The liquidated damages for those two strategic partners, who may have also brought in revenue from other transactions, are $500,000. Plaintiff also asserts that the liquidated damages of $50,000 for each agent are reasonable because actual damages after the breach were estimated to be between $4,035,380 and $5,837,197 for the three agents on the Kosanda Team – amounts far

exceeding the liquidated damages set forth in the contract.

Because the expert's damages calculation relies upon factors which could not have been quantified at the time the parties entered the nonsolicitation agreement, and because the expert's calculations of actual damages are close to or substantially greater than the liquidated damages, the Court holds the liquidated damages clause in Haines' nonsolicitation agreement is enforceable.

Alternatively, Defendants contend that liquidated damages should not be allowed because the Plaintiff is trying to recover twice. A party is not permitted to recover twice under multiple theories of law for the same injury. See e.g., Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1102 (3d. Cir. 1995); Nutrition Mgmt. Servs. Co. v. Harborside Healthcare Corp., 2005 WL 1176048 (E.D. Pa. May 17, 2005). Plaintiff is seeking liquidated damages from Defendant Haines, as his Separation Agreement with Plaintiff specifies, in addition to seeking actual damages for the same injury from Benmark, because Plaintiff's Nonsolicitation Agreement with Benmark does not include a liquidated damages clause.[3] Plaintiff may not recover twice from different parties, but may seek

---

[3] Plaintiff claims that the recovery of $150,000 liquidated damages for the Kosanda Team and the $441,925 for the BOLI Transaction are not a double recovery because "they flow from breaches of entirely separate duties and obligations." (Doc. No. 183 at 17). The same damages, even if caused by breaches of separate duties and obligations, cannot be recovered twice. See Starceski, 54 F.3d at 1102. Plaintiff contends that the liquidated damages provision covers time periods different from the estimated damages because the estimated damages do not include the entire time over which the Agents and Strategic Partners may have stayed with Plaintiff. (Doc. No. 205 at 2). Because of this excess time the liquidated damages act to cover what has not been calculated. (Id.) To the extent that Plaintiff argues that calculated and liquidated damages are mutually exclusive, the argument is flawed. Liquidated damages in this case cover all damages arising from a solicitation, whether calculable or not. Thus, there may be a significant amount of overlap between liquidated and calculated damages. The $150,000 liquidated damages for soliciting the Kosanda Team appears to overlap the expert's estimate of actual damages from the Kosanda Team solicitation. Similarly, the $441,925 actual damages for the BOLI Transaction appears to be one element of the $500,000 liquidated damages for the Thomas Brothers and Lynch. Plaintiff cannot recover the sum of both the liquidated damages and the actual damage estimate if there is overlap. The Court will carefully scrutinize evidence on damages at trial to

damages from both and recover the total injury from both parties jointly.  See eg. Heffner v. First Nat. Bank of Huntingdon, Pa., 166 A. 370, 372 (Pa. 1933).

Plaintiff argues that it should be able to recover liquidated damages from Haines in accordance with their agreement and actual damages above liquidated damages from Benmark. Normally, for claims against two defendants for the same injury, liability would be joint and several, yet never in excess of the total damage suffered.  This case is unusual because one of the contracts specifies liquidated damages while the other does not.  To hold that Plaintiff must choose between liquidated damages and actual damages at this time would be inequitable.  Plaintiff cannot claim liquidated damages against Benmark because the contract does not provide for liquidated damages. Plaintiff also cannot claim actual damages against Haines because the contract requires liquidated damages.  See Carlos R. Leffler, Inc. v. Hutter, 696 A.2d 157, 162 (Pa. Super. 1997) (enforcing a valid liquidated damages provision when actual damages are calculable).  The Court will allow Plaintiff to advance at trial both theories of damages and will mold the verdict, if necessary, to avoid double recovery based on the evidence presented.[4]

---

determine if there is an overlap.

[4] Alternatively, Defendants argue that compensatory damages related to Strategic Partners cannot be sought against Benmark because there was no mention of Strategic Partners in the complaint or nonsolicitation agreement.  The nonsolicitation agreement with Benmark specifies that Benmark cannot solicit "any personnel."  The language "any personnel" is broad; whether it may include Strategic Partners is a question of fact for the jury.  The complaint alleges that CBIZ and Benmark breached their Nonsolicitation Agreements and that Defendants interfered with Plaintiff's Strategic Partners.  Thus, Plaintiff can seek compensatory damages related to the Strategic Partners.

Defendants also contend that Plaintiff was not harmed by the alleged solicitation of ACB, and that Plaintiff cannot recover liquidated damages attributable to ACB.  Whether Plaintiff suffers damage is not a controlling factor and does not need to be proven where there is an agreement for liquidated damages.  Omicron Systems, Inc. v. Weiner, 860 A.2d 554, 565 (Pa. Super. 2004) (allowing liquidated damages without proof of actual harm); Sutter Corp. v. Tri-

For these reasons, Defendants' motion for Partial Summary Judgment on the issue of liquidated damages will be denied.

**C. Expert's Damage Calculation**

Defendants contend that the testimony of Plaintiff's expert relating to the length of time Kosanda would have remained employed with Plaintiff should not be allowed at trial. "[E]xpert testimony that ignores existing data and is based on speculation is inadmissible." Brill v. Marandola, 540 F.Supp.2d 563 (E.D.Pa., 2008). Federal Rules of Evidence 702 governs the admissibility of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The comments to Rule 702 provide further guidance:

> A review of the caselaw after Daubert [Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993)] shows that the rejection of expert testimony is the exception rather than the rule. Daubert did not work a "seachange over federal evidence law," and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi, 80 F.3d 1074, 1078 (5th Cir. 1996). As the Court in Daubert stated: "Vigorous cross-examination,

---

Boro Mun. Auth., 487 A.2d 933, 936 (1985) ("As a general rule of law it is not necessary to show any actual damages in order to recover liquidated damages pursuant to a contract providing for liquidated damages"); United States v. Bethlehem Steel Co., 205 U.S. 105, 119 (1907); Sun Printing & Publishing Ass'n v. Moore, 183 U.S. 642, 662 (1902); Miller v. Rankin, 11 A. 615, 616 (Pa. 1887) (upholding the lower court's decision to allow liquidated damages despite no actual damages alleged or proved). Liquidated damages here serve the purpose of setting the amount of damages when actual damages are not easily calculable.

> presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 595. Likewise, this amendment is not intended to provide an excuse for an automatic challenge to the testimony of every expert. See Kumho Tire Co. v. Carmichael, 119 S.Ct.1167, 1176 (1999) (noting that the trial judge has the discretion "both to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert's reliability arises."). . . . When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on "sufficient facts or data" is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.

Defendants argue that the opinion of Plaintiff's expert cannot be based on speculation that Kosanda would have remained employed with Plaintiff an additional three to five years. However, Plaintiff's expert does not offer an opinion on the length of time that Kosanda would have remained employed with Plaintiff. Instead, he calculates damages in two ways: 1) assuming Kosanda would have remained for three years, and 2) assuming Kosanda would have remained for five years. How long Kosanda would have remained employed with Plaintiff is a disputed material fact to be decided by the jury at trial. The jury may then choose to rely upon or disregard this portion of expert testimony.

Defendants further contend that the expert's actual damage calculation in regard to Kosanda is inadmissible because Plaintiff has not proffered evidence to allow a reasonable jury to conclude that Defendants' actions were a proximate cause of Kosanda's termination or that Kosanda would have stayed with Plaintiff for any period of time longer than he actually did. Defendants argue that the only evidence Plaintiff has shown to support its contention that Defendants proximately caused

Kosanda's termination is the testimony of Meyer, which they claim is self-serving and insufficient. "[C]onclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment. In order to satisfy the standard for summary judgment the affiant must ordinarily set forth facts, rather than opinions or conclusions." Blair v. Scott Specialty Gases, 283 F.3d 595, 608 (3d Cir. 2002) (internal citation and quotes omitted).

Plaintiff, in addition to the testimony of Meyer, claims that:

> based upon the undisputed facts that Kosanda was at Plaintiff for three years before defendants' interference; that he was one of the company's top producers; and, that Plaintiff was committed as an organization to accommodating Mr. Kosanda's difficult personality, a reasonable jury could conclude that, but for defendants' interference, he would have remained at Plaintiff for another three to five years.

(Doc. No. 183 at 13). Plaintiff has presented sufficient evidence to raise a genuine issue of material fact as to the cause of Kosanda's termination. For these reasons, the Court will deny Defendants' Motion for Summary Judgment with respect to the damage calculation.

## VI. CONCLUSION

In sum, this Court will grant Defendants' Motion for Partial Summary Judgment on the issue of the meaning of "solicitation." This Court will Deny the Motion for Partial Summary Judgment with respect to the liquidated damages and the damage calculation by Plaintiff's Expert. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MEYER-CHATFIELD,              :
                              :
        Plaintiff,             :      CIVIL ACTION
                              :      No. 05-3673
        v.                     :
                              :
CENTURY BUSINESS SERVICING, INC.,:
et al.,                        :
                              :
        Defendants.            :

**ORDER**

AND NOW, this 12th day of August, 2010, upon consideration of Defendants' Motion for Partial Summary Judgment (Doc. No. 181), Plaintiff's Memorandum in Opposition (Doc. No. 183) and Response to Defendants' Statement of Undisputed Facts (Doc. No. 184), Defendants' Reply to Plaintiff's Response (Doc. No. 186), Plaintiff's Sur-Reply Memorandum (Doc. No. 205), Defendants' Supplemental Memorandum in Support (Doc. No. 223), and Plaintiff's Supplemental Memorandum in Opposition (Doc. No. 224), and after a hearing on the Motion on July 2, 2010, it is ORDERED that Defendants' Motion for Partial Summary Judgment is GRANTED IN PART and DENIED IN PART as follows:

1. Defendants' Motion for Partial Summary Judgment on the issue of the meaning of "solicitation" is GRANTED;[5]

2. Defendants' Motion for Partial Summary Judgment on the issue of liquidated damages is DENIED;

---

[5] The Court will reserve ruling on whether it is necessary to define the term "solicit" for the jury.

3. Defendants' Motion for Partial Summary Judgment on the issue of the admissibility of testimony by Plaintiff's expert on damages is DENIED.

BY THE COURT:

 /s/ Joel H. Slomsky, J.  
JOEL H. SLOMSKY, J.